**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANDREW TREVINO** | § | |
| | § | |
| **V.** | § | **A-22-CV-152-RP** |
| | § | |
| **DETECTIVE TIMOTHY PRICE** | § | |

## ORDER

Before the Court are Plaintiff Andrew Trevino's complaint brought pursuant to 42 U.S.C. § 1983, Defendant Timothy Price's Motion to Dismiss, which this Court construed as a motion for summary judgment, Price's additional summary judgment evidence, Trevino's response, and Price's reply. Trevino, proceeding *pro se*, has been granted leave to proceed *in forma pauperis*. After consideration of the above-referenced pleadings, the Court grants summary judgment.

## I.  BACKGROUND

At the time Trevino filed his original complaint, he was confined in the Travis County Correctional Complex. In his original complaint Trevino alleges he was arrested in 2020 for unauthorized use of a motor vehicle, evading arrest, and possession of a firearm. Trevino indicates he "signed for 5 years probation and I.S.F."  According to Trevino, he went to an Intermediate Sanctions Facility (ISF) in March 2021 and finished the program in June 2021. Trevino apparently was also accused of a homicide committed on December 8, 2020. Trevino asserts at the time of the homicide he was at his apartment living with his two wives. He claims the "homicide was dismissed" for lack of evidence. In October 2021, Price allegedly obtained a warrant for Trevino's

arrest for the homicide.  Trevino claims the warrant slanders his name because he did not have outstanding warrants at the time he was released from the ISF.  Trevino asserts he was picked up by the U.S. Marshals and was transported to the Austin Police Department.  There, he claims Price placed handcuffs on him "extremely tight," causing nerve damage, numbing, and swelling to his hands.  Trevino contends this was an assault and battery.

Price moved to dismiss Trevino's complaint and argued Trevino only alleged state-law claims.  Price additionally argued Trevino failed to establish a waiver of immunity under Texas law, depriving the Court of jurisdiction.

Instead of responding to Price's motion to dismiss, Trevino filed a complaint pursuant to the Texas Tort Claims Act.  He alleges Price was negligent and committed intentional torts.

Price responded to the amended complaint with a second motion to dismiss.  He argued Trevino still failed to assert any federal claims.

Once again, Trevino failed to respond to the motion to dismiss and filed an amended complaint.  This time he alleged claims of excessive force, defamation, negligence, and intentional torts.

Price moved to dismiss the amended complaint.  He argued Trevino did not obtain leave to file an amended complaint.

Trevino failed to respond to the motion to dismiss.  Instead, he filed a new complaint against Price, alleging Price used excessive force on him on November 9, 2021, when Price placed handcuffs on Trevino "really tight."  Trevino asserts the placement of the handcuffs caused him nerve damage that required surgery.  Trevino's complaint was filed in a new cause, Cause No. A-22-CV-568-RP.

The Court later determined Trevino was not attempting to file a new case and was instead attempting to file another amended complaint in the instant cause.

As it was not clear whether Trevino understood that his amended complaint takes the place of his previously filed complaints in this cause, the Court allowed Trevino to file a final amended complaint.  The Court warned that any claims not included in the amended complaint against Price will be deemed waived.  Alternatively, the Court advised that Trevino may notify the Court that the complaint he executed on June 1, 2022, is his final amended complaint.

Trevino responded in July that the complaint he executed on June 1, 2022, was his final amended complaint.  In his amended complaint (ECF #20), Trevino alleges Price placed handcuffs on him really tightly on November 9, 2021, and the transporting officer had to loosen the cuffs in the garage.  Trevino contends the handcuffs caused nerve damage.  Trevino seeks $2 million in damages.      Price filed a Motion to Dismiss. The Court converted the Motion to Dismiss to a motion for summary judgment and provided the parties the opportunity to file summary judgment evidence.

Price asserts his entitlement to qualified immunity.  He also argues Trevino failed to allege a constitutional injury.  Price contends that Trevino's allegation that he suffered nerve damage and that a doctor recommended that he have an EMG is insufficient.  Price further argues Trevino failed to demonstrate that Price's actions in handcuffing Trevino were not objectively reasonable under clearly established law. Regarding Trevino's state law claims, Price argues Trevino failed to establish a waiver of immunity under Texas law and deprives the Court of jurisdiction.

In his supplemental summary judgment evidence Price provides the Court with his affidavit in which he asserts he did not handcuff Trevino.  Price further provides the Court with the affidavit

of the officer who did handcuff Trevino.  In addition, Price included video clips from the interview room, the dashcam of the patrol officer's vehicle, and the patrol vehicle's backseat camera.

Trevino responds he required multiple surgeries to treat the nerve damage to his left hand.

## II. ANALYSIS

A.    Summary Judgment Standard

"Summary judgment must be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(a)).  The court views the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor.  *Hanks* v. *Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009)).

"A qualified immunity defense alters the usual summary judgment burden of proof.  Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* at 744 (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

B.    Qualified Immunity

"Qualified immunity shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (cleaned up). "The qualified immunity inquiry includes two parts. In the first we ask whether the officer's alleged conduct has violated a federal right; in the second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that

4

the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (*en banc*). The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

C.      Excessive Force

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

The summary judgment evidence conclusively establishes that Price did not handcuff Trevino. Rather, the evidence shows Trevino alone in an interview room rotating and rubbing his shoulders. Price entered the room, followed by a patrol officer, and told Trevino to turn around and put his hands behind his back. As the patrol officer pulled his hinged handcuffs out, Trevino asked if he could be double-cuffed because he had "two messed up shoulders." The patrol officer indicated he only had one set of handcuffs on him but would double-cuff him when they returned to the patrol vehicle. Trevino's response was "alright."

The patrol officer asserts Trevino never complained about the handcuffs being too tight and denies there was any type of physical pull, push, or struggle that would cause the handcuffs to dig into Trevino's left hand and cause injury. The video evidence shows the patrol officer escorted Trevino to the patrol vehicle. The patrol officer did not have any grip on Trevino's arms, wrists, or the handcuffs.

The dashcam video shows the patrol officer retrieved a second pair of handcuffs and added them to the first pair to make Trevino more comfortable.  Trevino asked if he could stretch his shoulders before being recuffed, and the patrol officer granted his request.  Trevino told the patrol officer his shoulders were injured because he was "jumped" the previous evening.  The patrol officer secured Trevino in the backseat of the patrol vehicle.  When Trevino stated the temperature in the vehicle was too cold, the officer indicated he would change the temperature.  When Trevino indicated he had not eaten, the officer indicated he could check if food was available when they got to the jail. The officer transported Trevino to the Travis County Jail without incident.  The interaction between Trevino and the patrol officer was cordial and polite.

The summary judgment evidence conclusively demonstrates no force, let alone excessive force, was used during the handcuffing or transport of Trevino.  Furthermore, the summary judgment evidence shows Price did not handcuff Trevino.  Therefore, he is entitled to summary judgment.

D.    <u>Supplemental Jurisdiction</u>

Trevino also asserts state law claims.  Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action over which it has original jurisdiction that they form part of the same case or controversy.  However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  As, the summary judgment disposes of Trevino's federal claims, the Court declines to exercise supplemental jurisdiction over Trevino's state law claims.

It is therefore **ORDERED** that Defendant Price's Motion to Dismiss, which the Court converted to a Motion for Summary Judgment, is **GRANTED** with respect to Plaintiff Trevino's federal claims.

It is further **ORDERED** that Plaintiff Trevino's state law claims are **DISMISSED WITHOUT PREJUDICE**, as the Court declines to exercise supplemental jurisdiction.

**SIGNED** on September 20, 2022.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE